# IN THE MATTER OF APPLICATION OF MATEO FAJARDO CARDONA, FOR HABEAS CORPUS.

San Juan, Criminal, No. 662.

HABEAS CORPUS AFTER FINAL JUDGMENT.

Habeas Corpus—Purpose.
    1. The writ of habeas corpus secures to a prisoner the right to have the cause of his detention examined and determined by a court

NOTE.—On right to have claim of former jeopardy determined in habeas corpus proceeding, see note in 15 L.R.A.(N.S.) 227.

In the Matter of Cardona.

of justice, and if it is determined that he is held under lawful authority, the writ has served its purpose, the prisoner being remanded to his custodian; but if it should appear that he is unlawfully detained, he is discharged from custody, and there is no commitment which cannot be adjudicated upon this writ.

Habeas Corpus—Procedure.

2. The practice upon the writ of habeas corpus has been, upon return being made by the custodian, for the court either to declare the detention illegal and discharge the prisoner, or to declare it legal and dismiss the proceedings. The custody of the prisoner pending the hearing is in the discretion of the court. Jurisdictional questions are the only ones which can be raised on habeas corpus, and it cannot be used to review questions which should be reviewed by writ of error.

Habeas Corpus—Supreme Court of the United States—Decision—Presumption.

3. The case under consideration having been before the Supreme Court of the United States upon writ of error to the Supreme Court of Porto Rico, this court can consider only such jurisdiction and constitutional questions as were not decided in the Supreme Court of the United States, and it will not be presumed that the Supreme Court overlooked any constitutional question.

Supreme Court of the United States—Judgment—Opinion—Jurisdictional Questions—Assignments of Error—Presumption.

4. The judgment of the Supreme Court of the United States, and not the opinion, contains its decision. The judgment in this case was dismissal of the writ of error for lack of jurisdiction based on the assignments of error, for while it is true that the court could have considered jurisdictional questions not assigned, the presumption is that its action was based on the errors assigned.

Former Jeopardy—Treason and Felonies—Misdemeanors.

5. Jeopardy begins with the peril in which a prisoner is placed when he is regularly charged with a crime before a competent tribunal. Former jeopardy extends not only to treason and felonies, but also to misdemeanors.

Supreme Court of the United States—Authority of Direct Review of Territorial Criminal Cases—Merger.

6. The writ of error in this case brought up such supposed points as had been improperly decided by the local Supreme Court, and the Supreme Court of the United States, instead of affirming or reversing the local court, dismissed the case for lack of jurisdiction based

In the Matter of Cardona.

upon the absence of a Federal question. Whether or not the Supreme Court of the United States has authority of direct review of territorial criminal cases, it has the right and the duty to determine whether due process of law has been denied and the prisoner put twice in jeopardy, this being a Federal question. In this case a prisoner was charged and convicted of certain misdemeanors consisting of releasing alcohol from his distillery without paying the revenue thereon, and he was also charged with and acquitted of bribing an internal revenue officer in connection therewith. The misdemeanors were not merged in the felony, as they were separate and distinct offenses.

Crimes—Mala in se—Mala Prohibita.

7. Withdrawing alcohol from a distillery without paying the revenue thereon is not one of the offenses known as mala in se, but comes under the heading of "mala prohibita." It is a statutory offense, and must be governed by the wording of the statute.

Crimes—Continuous Offense—Element of Time.

8. The amount of time is not material if the point is whether there are one or more acts involved, that is, whether there are one or successive impulses. If the latter, they are distinct offenses, and there may be separate prosecutions even though the offenses be of the same nature.

Crimes—Continuous Offense.

9. In the present case everything necessary to be done to commit the offense of withdrawing alcohol without paying the revenue thereon was done on each respective day, and therefore each withdrawal was a separate offense.

Opinion filed July 30, 1917.

———

Statement of Facts.

This is a petition for habeas corpus filed July 2, 1917, by the petitioner, Fajardo, alleging that he is confined in the district jail of the Mayaguez district in the municipality of Mayaguez, Porto Rico, under commitments on convictions from the local district court of Mayaguez in three cases numbered on the doc-

In the Matter of Cardona.

ket of said court 2813, 2814, and 2816, in which he had been charged with withdrawing without payment of revenue license certain alcohol from the tank of his central at Hormigueros. The warden filed a return to the writ of habeas corpus on July 6, 1917, and the hearing was had on July 6 and subsequent days at Ponce. Attached to the petition and return, and filed at the hearing, were a number of documents, which will be mentioned so far as material. The evidence showed that case No. 2813 charges such extraction of upwards of 400 litres of alcohol on February 14, case No. 2814 charges similar extraction on February 18, and case No. 2816 charges similar extraction on February 21, 1914. Judgment was rendered in all these cases on the same day; to wit, January 27, 1915. Case No. 2815 was tried on September 24, 1914, and related to an alleged extraction of alcohol on February 9, 1914, and the evidence showed that the extraction of alcohol was by the consent and with the connivance of an agent of the insular government, one Vasquez, who was acting under the instruction of the Insular Treasury Department, and so co-operated with petitioner, Fajardo, for the purpose of working up a case against Fajardo. Upon this a nonsuit was moved, and the next day the court sustained the motion, and acquitted and discharged the defendant, petitioner here, the opinion filed being to the effect that the reason was there could not be a conviction where the government practically participated in the offense. Apparently the same evidence and the same point applied to the other three cases, but they were not tried. On October 2, 1914, an amendment was allowed to No. 2814, being the regulations connected with the enforcement of the revenue law, and thereupon the court dismissed No. 2814. An appeal had already been taken

In the Matter of Cardona.

in No. 2815, and one was now taken in No. 2814. In the Supreme Court of Porto Rico the defendant moved to consolidate the appeals, but before this was done the people of Porto Rico dismissed the appeal in case No. 2815, which dismissal carried with it the evidence. The motion of the defendant below, petitioner herein, to dismiss cause No. 2814, was denied by the Supreme Court of Porto Rico, and an elaborate opinion filed, remanding it to the district court for further proceedings. People v. Fajardo, 21 P. R. R. 429. In conformity with this opinion the district court at Mayaguez held on the trial that the offense as charged in the indictment was proved, and on January 27, 1915, rendered judgment in the three cases then before the court, to wit, Nos. 2813, 2814 and 2816, condemning the defendant to three months' imprisonment in each case.

These cases had been based on arrests upon warrants dated March 7, 1914; and on May 14, 1914, there was also filed against the petitioner an information charging the felony of bribery, growing out of the same transaction. The testimony in this case was by substantially the same witnesses as in the misdemeanor cases, and related to the payment and acceptance of $100 by Fajardo to Vasquez for permission to extract the alcohol above mentioned. The case came on for trial, and the petitioner was acquitted December 17, 1915, shortly before the judgments in the three misdemeanor cases above mentioned. A full record of the bribery case is not in evidence.

The three misdemeanor cases were, after the retrial, appealed to the Supreme Court of Porto Rico, with a statement of the cases, including evidence and exceptions, as certified by the local district court. On May 29, 1916, the cases were affirmed after a full opinion by Mr. Justice Hutchinson of the local Su-

In the Matter of Cardona.

preme Court, which found that the facts did not disclose so much a government trap as the unmasking of a scheme to defraud, and thereupon affirming the judgments. People v. Fajardo, 23 P. R. R. 823.

The petitioner thereupon on June 14, 1916, sued out a writ of error to the Supreme Court of the United States, and assigned the following errors in each of the three cases, there numbered 832, 833, and 834:

"1. That the said Supreme Court of Porto Rico erred in deciding upon an assignment of errors duly taken and presented to certain rulings of the district court for the judicial district of Mayaguez, Porto Rico, in and upon the trial of said cause, wherein the said Supreme Court sustained the rulings and judgments of the said district court, wherein were denied the personal rights of the defendant under the Constitution of the United States and the laws of Porto Rico.

"2. That said court erred in holding that by the proceedings and judgment in said cause, the defendant was not deprived of his liberty without due process of law, in that said court sustained the judgment of the said district court finding the defendant in error guilty upon a decision rendered by said Supreme Court in one of said causes prior to the trial of said cause in said district court.

"3. That said court erred in sustaining the ruling of the district court in which said district court overruled a motion to dismiss the three causes decided by the judgment herein, said motion having been based upon the fact that the informations in said actions were not filed within sixty days after the arrest of the defendant as provided by law.

"4. That said court erred in sustaining the ruling of the dis-

In the Matter of Cardona.

trict court in overruling the motion of the defendant requiring the plaintiffs to elect to proceed upon the accusation charging a felony, or upon the misdemeanors, as both of said alleged offenses constituted a part of the same transaction, and hence the same offense.

"5. The said court erred in sustaining the order of the district court in overruling defendant's objection to the exercise of original jurisdiction in this cause, because, in accordance with the Code of Criminal Procedure of Porto Rico, original jurisdiction in misdemeanor cases is vested in the municipal courts.

"6. The said court erred in holding that said court had not, directly or indirectly, instructed the trial court to find the defendant guilty prior to the trial of said causes or the introduction of testimony therein.

"7. The said court erred in sustaining the ruling of the district court in denying the defendant's motion for nonsuit.

"8. The said court erred in holding that the evidence was sufficient to sustain the judgment of the court.

"9. The said court erred in sustaining the judgment of the district court finding the defendant guilty.

"10. The said court erred in sustaining the sentence of the lower court in which said defendant was sentenced to jail in three cases.

"11. The said court erred in exercising jurisdiction in said causes either on the first or second appeal mentioned in the opinion of said court."

Full briefs were filed and the Supreme Court dismissed the appeal for want of jurisdiction, filing no opinion. [244 U. S. 645, 61 L. ed. 1368, 37 Sup. Ct. Rep. 651.]

In the Matter of Cardona.

Thereupon petitioner was surrendered by his bail to the Mayaguez jailer, and the present proceedings brought as above.

*Mr. Willis Sweet* for petitioner.

*Mr. Jaime Sifre* for Federico Costa, Warden.

HAMILTON, Judge, filed the following opinion:

Before determining the exact issue before the court, it will be well to establish some general principles.

1. The right to habeas corpus established in statute 31 of Charles II. (1679) secures to every American, as to every Briton, the right to have the cause of his detention examined and determined by a court of justice. If, upon such examination, it turns out that he is held under lawful authority, especially if he is held under a judgment of a court of competent jurisdiction, the writ has served its purpose and is discharged, the prisoner being remanded to his lawful custodian. If, on the other hand, it does not appear that the detention is lawful, the prisoner is discharged from custody. There are certain exceptions to the right to the writ, especially to its exercise in the United States courts. These are defined in Revised Statutes, § 753, Comp. Stat. 1916, § 1281, as follows: "The writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or is in custody in violation of the Constitution or of a law or treaty of the United States; . . ."

In the Matter of Cardona.

The essential point, however, is that there is no commitment, whether by the executive or judicial power, whose nature cannot be adjudicated upon this writ. This process is in many respects peculiar to Anglo-Saxon jurisprudence, and in its origin and exercise has made the English and their successors the freest people upon the globe. That the commitment is by final judgment of a court makes no difference. Church, Habeas Corpus, § 222; Re Neagle, 135 U. S. 1, 34 L. ed. 55, 10 Sup. Ct. Rep. 658.

2. The procedure in habeas corpus is simple, but efficacious. Revised Statutes, §§ 753 et seq. Its essence is the inquiry by a court into the validity of the detention of anyone. Magna Charta declared the principle of freedom from improper arrest in chapter 29, but as it did not furnish any machinery, the courts, although their judges were appointed by the King, began with characteristic independence to make the inquiry upon the petition filed. Herein originated much of the difference between English and continental political history. On the continent were and are similar constitutional declarations, but vox et præterea nihil, because there is no means of enforcing them against the will of the government. There courts are regarded as parts of the governmental machinery, and without power to inquire into governmental acts. Subsequent English statutes, such as 31 Charles II., regulated the procedure, but did not change the principle, and the practice has always been, upon return to be made by the custodian, for the court to deliberate and either declare the detention illegal and discharge the prisoner, or, upon finding the detention legal, to discharge the writ and dismiss the proceedings. The custody of the prisoner pending the hearing, which may last some time, is in the discretion

In the Matter of Cardona.

of the court. Church, Habeas Corpus, §§ 175–176. He may be released on bond, or on bail die in diem, remanded to the same custodian as representing the inquiring court and not the original writ of commitment, or he may be kept in custody of the inquiring tribunal. This court has varied its practice in different cases, and in the case at bar has thought it best to keep the prisoner in its custody by committing him to its marshal him safely to keep. In communities where the writ is not fully understood, remanding a prisoner to the original custodian might be misconstrued. In a recent case in this court the local jailer, under similar circumstances, meanwhile obeyed an order of another court and sent the prisoner away. This was done in good faith, but presented an awkward situation which must be avoided. In America the facts of the detention are more fully gone into by testimony taken than in England, but the case at bar comes upon the record alone. The Federal courts must, from the nature of the case, have the final determination of Federal, that is to say constitutional, questions; but the exercises of this extraordinary writ of right must be for the maintenance of justice, not for impairing its administration, and due regard must be had to the rights of other courts. Indeed in a very high sense all American courts make up one great co-ordinate system. Jurisdictional questions are the only ones that can be raised on habeas corpus; errors in the exercise of jurisdiction are reached by writ of error, which is therefore much fuller in its work and office. Re Spencer, 228 U. S. 659, 57 L. ed. 1012, 33 Sup. Ct. Rep. 709; Frank v. Mangum, 237 U. S. 309, 59 L. ed. 969, 35 Sup. Ct. Rep. 582. It is, however, especially as to constitutional points, not always easy to determine the line between jurisdiction and error. Ex parte Bige-

X. Porto Rico.—4.

In the Matter of Cardona.

low, 113 U. S. 328, 28 L. ed. 1005, 5 Sup. Ct. Rep. 542. If the detention is under the judgment of another court, this necessarily brings up for consideration the proceedings in that other court. Nevertheless, it in no sense amounts to a review or appeal of what has been properly decided. It is designed only to ascertain whether the court in question had jurisdiction, not whether that jurisdiction was carried out according to the usual rules of practice. Church, Habeas Corpus, § 223; United States v. Arredondo, 6 Pet. 691–709, 8 L. ed. 547–554. The distinction is fundamental, and the court acting on habeas corpus is in no sense a superior tribunal which can correct mere errors of procedure. Re Wilson, 140 U. S. 575, 35 L. ed. 513, 11 Sup. Ct. Rep. 870; Nishimura Ekiu v. United States, 142 U. S. 651, 35 L. ed. 1146, 12 Sup. Ct. Rep. 336. And in regard to the Federal court the rule is even stricter; for, while it is the duty of a Federal court, under the 14th Amendment as to state courts and the 5th Amendment and others as to Federal and territorial courts, to see that there has been due process of law, the rights and privileges of the local tribunals must be respected. The writ must generally be granted in advance of the trial. Ex parte Royal, 117 U. S. 254, 29 L. ed. 872, 6 Sup. Ct. Rep. 742; Urquhart v. Brown, 205 U. S. 179, 51 L. ed. 760, 27 Sup. Ct. Rep. 459. Over zealousness for individual rights may produce great confusion as to public rights, which ultimately mean private rights also.

3. It is therefore necessary to ascertain exactly what has been determined by the other court. In the application at bar the case in different forms went to the local Supreme Court, and then by writ of error to the Supreme Court of the United States, where it was affirmed. The ultimate decision, therefore,

In the Matter of Cardona.

is that of the Supreme Court of the United States, and this court has no right and certainly no wish to review anything decided in that tribunal. It has only the right to ascertain what actually was decided there. If questions are now brought up which were not decided in the Supreme Court, they may be the subject of examination; if, however, they have been passed upon already, they must be regarded as settled forever. If a point not before the Supreme Court is now raised, showing lack of jurisdiction or violation of the Constitution, it will be the duty of this court to sustain the writ and release the prisoner. Ableman v. Booth, 21 How. 506, 16 L. ed. 169. Tarble's Case, 13 Wall. 397, 20 L. ed. 597.

The writ is claimed in this case on the grounds: (1) That the Porto Rican court was without jurisdiction to impose the judgment and sentence under which the petitioner is held; (2) petitioner is restrained without due process of law; and (3) he has been placed in jeopardy more than once for the same offense. The first question is to settle how far these points have or have not become res judicata through action of the Supreme Court. It will not, and should not, be assumed that any constitutional question has been overlooked in the Supreme Court, the more especially as the case was expressly dismissed there for want of jurisdiction. Craemer v. Washington, 168 U. S. 129, 42 L. ed. 409, 18 Sup. Ct. Rep. 1.

4. The Supreme Court did not render an opinion. An opinion is valuable as showing the mind of the court, particularly in regard to the Supreme Court of the United States, where constitutional questions are involved. It is often unwise to rely upon a decision as to a particular point which was not brought specially to the attention of the court. But, neverthe-

less, the real decision of the court is not its opinion, but its judgment. The judgment in this instance was dismissal of the writ for lack of jurisdiction, and the action of the court was based necessarily on the assignments of error. The court can go outside of the record where a matter of jurisdiction appears which has not been assigned; but ordinarily the court proceeds upon the assignments made, and it is to be presumed did so in this case. The assignments in this case seem to have been the same in the three branches of the case taken up, being nominally at least three different cases, Nos. 832, 833, and 834 in the Supreme Court of the United States, [244 U. S. 645, 61 L. ed. 1368, 37 Sup. Ct. Rep. 651] Nos. 2813, 2814, and 2816 in the insular court at Mayaguez, Porto Rico, and Nos. 732, 833, and 852 in the Supreme Court of Porto Rico. [23 P. R. R. 823.]

. It would seem, therefore, that the Supreme Court of the United States must be held to have decided the following questions raised by the assignments and numbered in the same order: (1) Personal rights of the defendant under the Constitution of the United States and the laws of Porto Rico; (2) deprivation of liberty without due process of law; (3) retaining the actions, although the informations were not filed within sixty days after the arrest of defendant; (4) the effect of proceeding upon a felony and upon the misdemeanors constituting parts of the same transaction; (5) that the municipal court, and not the district court, had jurisdiction; (6) that the local Supreme Court had instructed the trial court to find the defendant guilty prior to introduction of testimony; (7) denial of motion for nonsuit; (8) insufficiency of the evidence; (9) sustaining the judgment of guilty; (10) sustaining the sentence

to jail in the three cases; (11) the jurisdiction of the local Supreme Court on the appeals.

This would dispose of a number of the questions raised on the argument, interesting as they are. It would manifestly be unsatisfactory to hold that the Supreme Court passed on one question presented, and not another. This would tend to great uncertainty, and not show proper respect to the court. The judgment of the court embraces everything that is expressed in it, and also everything that is involved in the question submitted. In other words, the whole subject before the court is to be considered as decided, whether expressed in the words of the judgment or not. This is the more important, as the case at bar is based upon the judicial record, and not anything extraneous or occurring since the judgment, and therefore is to be decided upon the record presented. Church, Habeas Corpus, § 379. It seeks to raise several questions of personal right under the Constitution and its amendments.

5. Some of the constitutional provisions claimed to be infringed overlap. Thus, due process of law would prevent one's being put twice in jeopardy for the same offense, which principle is separately mentioned in the constitutional amendments. This would tend to show that the subject-matter is to be carefully guarded. Former jeopardy is a principle which goes back far in the English law, and was designed to prevent the government from turning a prosecution into a persecution. If a man is punished once, that is sufficient; and, as a line had to be drawn somewhere, it was drawn exactly at the point where he came in danger of being so punished twice, and not at the beginning of the punishment itself. Jeopardy begins with the peril in which a prisoner is placed when he is regu-

In the Matter of Cardona.

larly charged with a crime before a competent tribunal. The words used in the United States Constitution, Amendment 5, are, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." This literally extends only to treason and felonies, but has properly been extended to misdemeanors. 1 Bishop, Crim. Law, § 990; McCauley v. State, 26 Ala. 135; Ex parte Lange, 18 Wall. 163, 21 L. ed. 872. It therefore applies to imprisonment, but not merely to proceedings for recovery of penalties. 1 Bishop, Crim. Law, § 990. Jeopardy begins when one is put on trial upon information sufficient in form and substance to sustain a conviction before a jury. Cooley, Const. Lim. 404. So far has this been carried that it is held that a discharge of a jury during a trial without defendant's consent operates an acquittal. Ex parte Gunter, 83 Ala. 96, 3 So. 600. But it does not apply to a second trial where a jury has been properly discharged. Simmons v. United States, 142 U. S. 148, 35 L. ed. 968, 12 Sup. Ct. Rep. 171; Thompson v. United States, 155 U. S. 271, 39 L. ed. 146, 15 Sup. Ct. Rep. 73, 9 Am. Crim. Rep. 209. Jeopardy begins when a jury is completed and sworn. Bishop, Crim. Law, § 1014. After that time the prisoner cannot again be prosecuted for the same offense.

6. Before examining this, it is important to see if the method of the present application by habeas corpus admits of a fuller consideration of any of the points involved in the writ of error. The writ of error brought up such supposed points as had been improperly decided by the local Supreme Court on appeal in any of the three cases from Mayaguez, so far as the Supreme Court of the United States had power to re-examine them. Instead of passing on them and affirming or reversing, the Su-

In the Matter of Cardona.

preme Court decided that it had no jurisdiction for lack in the case of a Federal question. Why? It might be because the law does not authorize direct review of territorial criminal cases, for no such law has been cited. If without such jurisdiction to hear an appeal, would the Supreme Court have jurisdiction to determine constitutional questions involved in the appeal? Would it have the right to determine that a constitutional right had been violated on the trial below? It certainly would have the right and the duty to determine the Federal question whether due process of law had been denied and the prisoner put twice in jeopardy. This is in practice a large part of the jurisdiction exercised by the Supreme Court. Frank v. Mangum, 237 U. S. 309, 59 L. ed. 969, 35 Sup. Ct. Rep. 582. Habeas corpus is a different procedure, but gives ordinarily smaller, not larger, play to Federal jurisdiction than appeal or writ of error. Even if there was no appellate jurisdiction of the criminal appeal, there would at least be the same jurisdiction as to constitutional questions, neither more nor less, whether the case come into the Federal courts on appeal or on habeas corpus. Procedure does not change the constitutional rights of a prisoner or the constitutional duty of the court. On this application, therefore, nothing more can be raised than on an appeal, and whatever was decided on the appeal is res judicata on the present application. Apart from matters of mere procedure, such as motions, evidence, and form of judgment, and construction of local statutes, whose decision belongs to the local Supreme Court, there would be eliminated, therefore, the interesting question of merger of the misdemeanors in the felonious charge of bribery, for this was in the assignments of error. Even if it were not, however, the court could not sus-

In the Matter of Cardona.

tain the argument. This argument goes on the principle that second jeopardy arises when a man is tried for something involved in a former conviction. A striking example is the case of State v. Cooper, 13 N. J. L. 361, where a man convicted of arson was arraigned for murder of two persons burned in the fire. He pleaded former conviction, and as he had been tried for the same act, that is the fire, the plea was sustained. So, a conviction of manslaughter may be had on an indictment for murder, because the same act with elements in common, and a conviction or acquittal of the lower grade offense per contra releases the accused from liability for the higher offense made up of the same acts *plus* other elements. There is pro tanto a former jeopardy. Whart. Crim. Law, § 27.

That a local jurisdiction prosecutes a number of different phases of allied transactions may be good policy, or it may be policy arising from improper motives, but at least it violates no constitutional right of the prisoner. To be a merger calling for election, there must be one transaction which cannot be labeled by different names to justify different prosecutions. The offense of bribery was charged in connection with the release of the alcohol, but it was not the same thing. There might have been bribery with no release of alcohol. It was on a different date, at a different place, and was or might have been proved by different witnesses. Moreover the question of merger with bribery charge could not come up in the alcohol misdemeanor cases tried a year previously, nor was it in fact raised in the alcohol cases. If it had merit, it would have been as a plea of former jeopardy to be raised in the later bribery trial. State v. Blevins, 134 Ala. 213, 92 Am. St. Rep. 22, 32 So. 637; Burton v. United States, 202 U. S. 344, 50 L. ed. 1057,

26 Sup. Ct. Rep. 688, 6 Ann. Cas. 362; Gavieres v. United States, 220 U. S. 339, 55 L. ed. 489, 31 Sup. Ct. Rep. 421. But it was not so raised or needed, as prisoner was acquitted of bribery. Nor had it merit, even if properly raised. Assault on a watchman to secure entrance could not include the resulting offense of robbing the bank, nor vice versa, although it would be otherwise if the assault and the robbery were of the watchman himself at one time and place. Whart. Crim. Law, § 27. But the question as to the bribery and release of alcohol was before the Supreme Court in assignment of error numbered 4. The evidence also shows that the question of securing conviction by setting a trap, that is, whether there was a crime when the local government, through their officials, participated to the extent of turning on the tank outlet to which by law they alone had the key, was fully presented to the Supreme Court, and the Supreme Court held the case as brought showed no Federal question. If it was not a Federal question then, it is not now. Therefore extending the judgment of the Supreme Court the breadth of the assignments of error, which would seem to be necessary, there would be left but one question of those now raised to be considered by this court upon habeas corpus, and that is, after the defendant, Fajardo, was acquitted in No. 2814 of the offense of illegally releasing alcohol from the tank, did that under the principle of a continuous offense include within it prosecution for the release of alcohol on another day from the same tank and under the same arrangement with the revenue agent?

7. It will be important for this purpose to ascertain the exact nature of a crime. Some crimes are such as are offensive to the moral sense of mankind, and are called "mala in se;"

In the Matter of Cardona.

although, as the moral sense of mankind differs in different parts of the world, this is a variable distinction. Probably it will be better to take the moral sense of the more highly civilized nations as a guide in this regard. Other offenses are called "mala prohibita," because they are offensive, not to morality, but to the general policy of the particular country. This class will vary greatly not only in different countries, but in the same country at different times and under different circumstances. It is under this latter class that there will fall the offense in question, that is to say, breaking the revenue laws of the Island of Porto Rico by withdrawing alcohol from the tank in which it is distilled from a sugar central, without paying the revenue tax, which is imposed for the purposes of the local government. What the crime is, therefore, depends upon the wording of the law, and cannot be extended any further. Burton v. United States, 202 U. S. 344, 50 L. ed. 1057, 26 Sup. Ct. Rep. 688, 6 Ann. Cas. 362. Statutory crime is to be strictly construed, and does not embrace anything beyond its terms. This maxim comes from Roman law. Whart. Crim. Law, § 28.[1] The principal question, therefore, is, What does the statute prohibit? Is it a practice, a continuous offense, or is it an individual act which offends the law in this case?

The wording of the law must be studied to determine this. The law is found in § 3 of the Internal Revenue Law (Porto Rico Compilation 1911, § 3025) as follows: "On all distilled spirits produced in Porto Rico, or brought or imported into Porto Rico, a tax of 28 cents on each liter, or fraction thereof."

Also in § 6 of the same law (Compilation, § 3028) as fol-

---

[1] L 42, D depoen. (48.19) L 155, Sec. 2 de reg. jur. (50.17) cap. 49 de reg. jur. in VI. (5.13).

In the Matter of Cardona.

lows: "That the tax shall attach to alcoholic spirits as soon as separated, either in a pure or impure condition, by distillation or other process of evaporation, from any fermented or other substances; but payment thereof shall be made before such spirits are removed from the factory, except as otherwise provided in this act . . . Every person who sells or otherwise disposes of any alcoholic spirits, on which the tax has not been paid in the manner herein provided, or who uses for purposes other than those herein in this section specifically prescribed any alcohol exempt from taxes by the provisions hereof, shall be guilty of a misdemeanor and shall for the first offense thus committed be fined not less than $100 nor more than $500, or be imprisoned for not less than one month nor more than one year: *Provided,* That for the second and each subsequent offense thus committed both fine and imprisonment shall be imposed. . . ."

There are regulations for enforcement of the law, but it is the violation of the law, not of the regulations, that constitutes the misdemeanor. Thatcher's Distilled Spirits (Thatcher v. United States) 103 U. S. 679, 26 L. ed. 535.

A sovereign, quasi or otherwise, having power to declare a crime, must be held to have power to define the elements making up that crime. It may make criminal a single act, or different phases of one act, or a course of conduct,—a kind of compound or continuous crime. This is a matter for the legislature; the courts only determine what class is embraced in any statute under consideration. Whart. Crim. Law, § 27, note 3; Crepps v. Durden, Cowp. pt. 2, 640, 98 Eng. Reprint, 1283, 1 Smith, Lead. Cas. (Hare & W.) 711.

8. The question whether what a criminal does is to be con-

strued as a single act or a continuous offense has many ramifications. It has come up frequently in connection with the laws against polygamy, forbidding a man from living with more than one wife. This has been construed as a continuous offense, and the time a man lives with plural wives cannot arbitrarily be divided up into an offense lasting one month, one week, or even one day. When an indictment is found for such an offense, it embraces the whole subject of so living up to the time of prosecution, and indeed embraces time afterwards if it is a continuation of the same state or circumstances. Re Snow, 120 U. S. 274, 30 L. ed. 658, 7 Sup. Ct. Rep. 556. So, while distinct takings at one place may be different thefts, coal taken from one shaft at different levels, on different lands, and for a series of years, may be "one continuous taking," as expressed by Mr. Justice Erle. 2 Bishop, Crim. Law, § 889. Where a baker was indicted for selling rolls on Sunday, Lord Mansfield held that the course of conduct was what was denounced by the Sunday law, not single acts of sale, and that therefore he could only be tried once for all the sales on one Sunday as making up one offense. Crepps v. Durden, supra; Re Snow, 120 U. S. 283, 30 L. ed. 662, 7 Sup. Ct. Rep. 556. The amount or lapse of time is not material if the point is whether there are one or more acts involved, or, as Mr. Wharton expresses it, whether there is one or successive impulses. If the latter, there are successive offenses and may be successive prosecutions, even though the offenses be of the same nature. The fact that a man commits one crime to-day does not give him immunity to commit another like it to-morrow. And it has been held that, if he feloniously kills two persons with one blow, he is guilty of two murders. Whart. Crim. Law, §§ 27, 931. If one abstracts

gas by one pipe continuously used, however, it is one act and one crime regardless of the length of time. Whart. Crim. Law, § 931.

9. Applying these principles to the case at bar, it seems from the record the prisoner, Fajardo, agreed with the revenue agent, Vasquez, that for certain considerations the agent would unlock the officially locked tanks, and that Fajardo would then, without placing the legal stamps on the stock list or invoice, draw off or release the alcohol for his own purposes. This was done four times, that is, on different days, to wit, the 9th, 14th, 18th, and 21st of February, 1914, Fajardo on each occasion securing the co-operation of Vasquez. This being so, was it a continuous act or four different acts? It is argued that Vasquez had been directed to work up a case, and that there was one agreement and therefore there was one continuous act. More properly, however, whether Vasquez exceeded his instructions or not, there was at most an understanding under which four offenses were committed. The offense consisted in withdrawing the alcohol without using and paying for the necessary revenue stamp. There were four unlockings of the tanks, each on separate days, and four withdrawals, apparently of all the alcohol which had accumulated in the tank up to those respective days. Properly, there would have been one stamp affixed each time, proportioned to the respective amount so withdrawn. If the alcohol had run four days under one unlocking and opening and abstracted four days, successive or otherwise, the act could not have been broken up into days and called four offenses. But here everything necessary to constitute an offense was done over again on each occasion. One cannot agree to commit four offenses, and then claim when separately com-

In the Matter of Cardona.

mitted that therefore they are only one. What was done amounted to four offenses, not one continuous offense, and therefore no constitutional right, whether as to the due process of law, jeopardy, or otherwise, was violated in the four prosecutions, Nos. 2813, 2814, 2815, and 2816 had in the local court.

It follows, therefore, that the prisoner has not been improperly detained by the insular jailer at Mayaguez, but that he must be remanded to such custody. The marshal will therefore return the prisoner to the custody whence he was received, to be there held according to law.

It is so ordered.